## WILLIAMS v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted January 5, 1925. Decided March 2, 1925.)

No. 4140.

1. **Criminal law ⬅⇒703 — Opening statement held not misconduct constituting reversible error.**

In prosecution for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), incomplete statements of prosecuting attorney in opening remarks, claimed to refer to matters not within the indictment, *held* not misconduct constituting reversible error.

2. **Poisons ⬅⇒9—Possession and sale may be established by declarations or circumstantial evidence.**

Unlawful possession and sale of narcotics in violation of Harrison Anti-Narcotic Law (Comp. St. §§ 6287g–6287q) may be proved prima facie by acts, conduct, or declarations, or by circumstantial evidence.

3. **Poisons ⬅⇒9—Evidence held to sustain finding of defendant's possession and sale or guilt as accessory before fact.**

Evidence *held* sufficient to sustain jury finding of defendant's possession and control of narcotics, and his sale and delivery thereof to state's witness, in violation of Harrison Anti-Narcotic Act, §§ 1, 8 (Comp. St. §§ 6287g, 6287n), or at least that he was an accessory before the fact, and criminally responsible as principal, under Code, § 908.

4. **Poisons ⬅⇒9—Possession and control raises presumption of guilt of unlawful dealing.**

In prosecution under Harrison Anti-Narcotic Act, §§ 1, 8 (Comp. St. §§ 6287g, 6287n), defendant's possession and control of narcotics described in indictment raised presumption of guilt under count charging unlawful dealing, but as to other counts charging sales government was required to prove specific sales.

5. **Criminal law ⬅⇒419, 420(1)—Poisons ⬅⇒9—Testimony as to delivery of narcotics received to another state's witness for delivery to chemist held not hearsay, nor immaterial.**

In prosecution for sales of narcotics in violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g to 6287q), testimony as to delivery and identification of package by purchaser to another government witness, who delivered it to chemist for analysis, *held* not hearsay, nor immaterial or irrelevant.

**6. Criminal law ⬥1169(5)—Admission of evidence as to memorandum on package of narcotics, delivered chemist, held not prejudicial error.**

In prosecution for unlawful sales of narcotics, testimony by chemist as to identification of package "by means of writing * * * as being package alleged to have been bought," *held*, if error, not prejudicial, in view of prompt instruction that memorandum was admitted solely for purpose of identifying package.

**7. Poisons ⬥9—Indictment charging sale of narcotics, not in pursuance of written order of purchaser, held not defective.**

Indictment alleging defendant did sell, barter, exchange, and give away narcotics to stated person, not in pursuance of written order of such person, *held* not defective, under Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h); the written order contemplated by such section being order of purchaser, and not of physician, dentist, or veterinary surgeon.

Appeal from Judgment of Supreme Court of District of Columbia.

Charles Williams was convicted of violations of Harrison Anti-Narcotic Act, and he appeals. Affirmed.

See, also, 54 App. D. C. 65, 294 F. 996.

W. E. Leahy and E. S. Clark, both of Washington, D. C., for appellant.

Peyton Gordon and J. H. Burnett, both of Washington, D. C., for the United States.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal from a judgment of the Supreme Court of the District of Columbia, sentencing the appellant, Charles Williams, to imprisonment for a period of five years in a penitentiary to be designated by the Attorney General.

It appears from the record that Williams was indicted on the 30th of December, 1922, and charged, first, with selling and dealing in narcotics between the 2d of January, 1922, and the 5th of December, 1922, without registering his business with the collector of internal revenue and paying the special license tax prescribed therefor; second, with selling on the 10th of October, 1922, to one Charles F. Ruby, narcotics, without procuring from Ruby the written order prescribed by law; third, with making sales of narcotics on the 10th of October, 1922, in packages other than the original packages bearing the proper revenue stamps. The defendant, on his plea of not guilty, was brought to trial on the indictment before a jury duly impaneled, and found guilty as charged, whereupon

the court entered the judgment hereinbefore mentioned, from which judgment this appeal was taken.

After the jury was impaneled, counsel for the United States made his opening statement, and among other things said to the jury: "The government will show you that on another occasion, October 16, 1922, about 7:30 p. m.—" At this point counsel for the defense objected to the language quoted, on the ground that it was not within the scope of the indictment. Replying to the objection, counsel for the government stated that "The dealer's count charges that between the 2d of January, 1922, and the 5th of December, 1922, the defendant dealt in narcotics, and it was in support of that count that I have been referring to—" To that incomplete statement defendant's counsel objected, on the ground that the defendant could not know what charge he was called upon to meet. The court then inquired as to whether the government proposed to show additional instances other than those referred to in the second and other counts. To which the attorney for the United States responded as follows: "Not additional instances, if your honor please, but conversations had with the defendant tending to show—" And to that unfinished statement counsel for the defendant again objected, and moved that a juror be withdrawn, because of misconduct of the district attorney. Apparently the jury withdrew pending discussion of the motion, but counsel for defendant insisted that a juror should be withdrawn, because of what had already taken place in the presence of the jury. The court refused to withdraw a juror, and defendant excepted. Counsel for the defendant then requested the court to require the district attorney to show that the defendant was within the class that was required to register, unless he was found in the possession of the contraband drug, and to rule that, if the defendant was not found in possession of the drug, he could not be charged as a dealer and distributor. The court refused to require the district attorney to show that the defendant was required to register, unless he was found in possession of the contraband drug, and to that ruling the defendant excepted.

The testimony introduced on the part of the government tended to show that Charles F. Ruby was introduced to the defendant on the 10th of October, 1922, about 11 o'clock in the morning; that Ruby went to Williams' home at 410 Third Street, S. W., Washington, D. C., and found Williams in front of

his house, working on his automobile; that he asked Williams if he would sell him some dope, and that Williams answered, "Yes, how much?" that Ruby responded, "$10 worth;" that Williams said he did not wish to sell $10 worth, but that he would sell $25 worth; that Ruby replied that he had only $10, whereupon Williams called to a man on the other side of the street and told the latter "to go in and get it"; that the man so called by Williams went through the archway at 410 Third Street, S. W., and that Ruby was then instructed by Williams to go to 4½ and D streets and to wait *for Williams* at that point; that Ruby went to 4½ and D streets, and waited there until a machine driven by Williams arrived; that a man who was in the machine with Williams jumped out, gave Ruby some "dope" in a white package, and after receiving from Ruby the money for it jumped into the machine, which then drove away.

The evidence on behalf of the government established prima facie that the package received by Ruby at 4½ and D streets, was soon thereafter identified and delivered by him to Samuel L. Rakusin, and that Samuel L. Rakusin delivered it for analysis to Albert B. Spear, a chemist, with a memorandum thereon, to identify it. Spear testified that the package was identified to him by Rakusin "by means of writing * * * as being a package alleged to have been bought by one Charles F. Ruby." Spear said that he analyzed the contents of the package, and found that the package contained 95 grains of cocaine hydrochloride, a derivative of coca leaves. Counsel for the defendant objected to all testimony as to the identification and delivery of the package as hearsay, and as immaterial and irrelevant evidence. The objection was overruled, and the defendant excepted.

The defendant took the stand in his own behalf, and denied that he met Ruby in front of his house on October 10th. He testified that he never had any conversations with Ruby concerning the purchase of "dope," and that he never at any time drove an automobile from which a man alighted and gave Ruby a package. The testimony of the defendant was the only evidence in his behalf, and, the case having been submitted on both sides, the court, among other things, charged the jury as follows:

"Now, if you find that the defendant, Williams, had in his possession or under his control narcotics as set out in the indictment, then from that fact there arises a presumption of his guilt under the first count of the indictment. As to the second and third counts, the government must prove the specific sales mentioned therein to Ruby."

To that part of the instruction as to the presumption of guilt arising from the possession or control of narcotics the defendant excepted.

[1] None of the assignments of error upon which the appellant relies can be sustained. The incomplete declarations made by the attorney for the government in his opening statement contained nothing injurious to the defendant, and did not warrant the charge of misconduct. Even if the opening statement had contained matter harmful to the defendant, such matter, if not supported in any way by evidence subsequently introduced, instead of prejudicing the minds of the jury against the defendant, would rather tend to give the jury an unfavorable impression of the case for the government. Nichamin v. United States (C. C. A.) 263 F. 880, 882. Witnesses not infrequently refuse to confirm under oath unsworn declarations made by them prior to taking the stand, and courts quite often on objection exclude testimony offered by counsel believing it to be admissible. Under such circumstances it would be going far indeed to hold that the declarations apparently made in good faith by government counsel in his opening statement amounted to misconduct and constituted reversible error. People v. Wong Hing, 176 Cal. 699, 700, 169 P. 357.

[2] In order to establish that the defendant possessed and sold the narcotic, it was not necessary for the government to show that the defendant had the drug actually in hand or that he in person actually delivered the cocaine hydrochloride to Ruby. Possession of a narcotic and sale thereof may be proved prima facie by acts, conduct or declarations of the party accused or by circumstantial evidence, just as any other material fact may be proved. Williams bargained with Ruby to sell to the latter "$10 worth" of the narcotic. He directed a third person to go and get the drug. He instructed Ruby to go to 4½ and D streets, and wait there for him, and in view of what subsequently happened that instruction meant nothing less than that Ruby was to receive the drug at 4½ and D streets and pay therefor the price agreed upon. Ruby went to 4½ and D streets; while he was waiting at that point, Williams drove up in an automobile, out of which a man jumped who delivered the narcotic, received the money therefor, and then returned to the machine, which was driven away by Williams.

[3] The evidence in the case, accepted by the jury as true, fully justifies the conclusion that the cocaine hydrochloride was under the control and in the possession of Williams, and that he sold and delivered it to Ruby. Moreover, the evidence submitted by the government tended to prove at the very least that Williams was an accessory before the fact, from which it follows that he was chargeable and criminally responsible as a principal, under section 908 of the Code. Maxey v. United States, 30 App. D. C. 63, 72, 73.

[4] The prosecution having proved prima facie that the defendant was in the possession of 95 grains of cocaine hydrochloride which he sold to Ruby, it must be presumed that he violated the provisions of section 1 of the Harrison Anti-Narcotic Act (Comp. St. § 6287g), as prescribed by section 8 thereof (section 6287n), which, in so far as pertinent, reads as follows:

"Sec. 8. That it shall be unlawful for any person not registered under the provisions of this act, and who has not paid the special tax provided for by this act, to have in his possession or under his control any of the aforesaid drugs; and such possession or control shall be presumptive evidence of a violation of this section, *and also of a violation of the provisions of section 1 of this act:* Provided, that this section shall not apply to any employee of a registered person, or to a nurse under the supervision of a physician, dentist, or veterinary surgeon registered under this act: * * * Provided further, *that it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment, or other writ or proceeding laid or brought under this act; and the burden of proof of any such exemption shall be upon the defendant."* (Italics not quoted.)

Presumptively, therefore, the defendant was required to register as prescribed by law, and the government was not obliged to introduce any evidence to show that Williams had not registered, or had not paid the tax, or that he was not exempt from registration. Defendant's possession and control of the narcotic imposed upon him the burden of establishing that he had registered, or that he was one of the persons named in section 8, or was exempt from registration under the provisions of the act. The indictment in the case of United States v. Jin Fuey Moy, 241 U. S. 394, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, did not, as does the indictment in this case charge that the defendant unlawfully, willfully, feloniously, and knowingly imported, manufactured, produced, compounded, sold, dealt in, dispensed, administered, and gave away narcotics. The indictment in the Jin Fuey Moy Case, supra, simply accused the defendant of unlawfully, willfully, knowingly, fraudulently, and feloniously *conspiring* and *agreeing* with Willie Martin and divers persons to the grand jurors unknown to commit an offense against the United States, to wit, to unlawfully and feloniously have in the possession and under the control of the said Willie Martin opium and compounds and salts and derivatives and preparations thereof, to wit, one dram of morphine sulphate. See United States v. Jin Fuey Moy (D. C.) 225 F. 1005. Under section 8 a conspiracy or criminal agreement cannot be presumed from the possession or control of a narcotic by a person other than the defendant. The possession or control which raises the presumption must be that of the accused. The case of United States v. Jin Fuey Moy, 241 U. S. 394, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, cited by defendant, is therefore not in point. The instruction given by the court as to the presumption of guilt arising from the possession or control of narcotics was fully justified by the evidence introduced by the government, and was in our opinion in strict accordance with the provisions of section 8. Robinson v. United States, 53 App. D. C. 96, 97, 98.

[5] The testimony of Ruby as to the delivery and identification of the package to Rakusin as the same package "to which he made reference," and Rakusin's testimony as to the receipt of the package from Ruby, was not hearsay evidence, and, far from being immaterial or irrelevant, was quite material and relevant to the case, inasmuch as the package received by Ruby at 4½ and D streets had to be traced from Ruby to the chemist, in order that the latter might testify to its contents as established by his analysis thereof.

[6] In the absence of appropriate instructions from the court, the testimony of Spear to the effect that the package received by him from Rakusin was identified to him by Rakusin by means of writing on the package, alleging that it was bought by Ruby, would have been open to serious objection. As the court, however, promptly took pains to instruct the jury that the memorandum on the package could not be considered by the jury as proof of a sale, or of the statements made thereon, and that the memorandum was admitted solely for the purpose of identifying the package which

Rakusin turned over to Spear, and which Spear said he received from Rakusin, we are of the opinion that any error resulting from the admission of the testimony of Spear as to the nature of the memorandum on the package, was cured by the instruction, and did not prejudice the defendant, inasmuch as it was the bounden duty of the jury to accept and obey the instruction as the law of the case.

[7] The point made by appellant's counsel that the second count of the indictment was fatally defective is not well taken. The allegation that said defendant did sell, barter, exchange, and give away narcotics to Charles F. Ruby, not in pursuance of a written order of Charles F. Ruby, is in strict accord with section 2 of the act (Comp. St. § 6287h), which expressly provides that it shall be unlawful for any person to sell any of the drugs mentioned in the act, except in pursuance of a *written order of the person to whom such article is sold.* The part of section 2 just referred to contemplates a written order from the purchaser, and not the prescription of a physician, dentist, or veterinary surgeon, as contended by the appellant.

We find no reversible error in the record, and the judgment appealed from must therefore be affirmed.