Marvin Delane WHITE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18134.

United States Court of Appeals Ninth Circuit.

March 11, 1963.

Rehearing Denied April 18, 1963.

See also 294 F.2d 952.

**114**

☜847

Apple & Cohen, Irving D. Apple, and Theodore A. Cohen, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, and John A. Mitchell, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and PENCE, District Judge.

PER CURIAM.

Appellant was indicted in Count I for the sale of heroin on June 22, 1959; in Count II for the possession or concealment of heroin on June 22, 1959; and in Count III for possession and concealment of marijuana on June 21, 1960. Upon pleas of not guilty to each count, the trial judge severed Count III. A jury found appellant guilty of Counts I and II, and appellant was sentenced to two concurrent five year terms. Count III was dismissed.

Appellant urges as grounds for appeal:

   I.  Insufficiency of the evidence of possession as to both counts.

  II.  The federal rule that an accused can be convicted by the uncorroborated testimony of an accomplice should be changed.

 III.  Error in instructions with respect to:

    a) the burden of proof on defendant

    b) presumptions created by unexplained possession of drugs

 IV.  The presumption in 21 U.S.C. § 174 is unconstitutional:

    a) because it violates the due process clause

    b) because no rational basis therefor

  V.  Prejudicial error of prosecutor in argument to the jury.

We adopt the government's statement as to the facts of the case,[1] as we must. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

1. "On June 21, 1959 Wallace saw White at a theatre in Beverly Hills. Wallace asked White to meet him on the following day. They agreed to meet at Tiny Naylor's Drive-in on June 22, 1959. Wallace met with Federal agents on the morning of June 22, 1959. Wallace was searched. His car was searched. Wallace was supplied with $100 in Government funds. Wallace, followed by a Federal agent, drove to Tiny Naylor's Drive-in. Wallace parked his car and went inside the Drive-in. As soon as White arrived Wallace left the Drive-in and got into White's automobile. They drove around for a few minutes. White was given the $100 in official funds. White agreed to furnish Wallace with heroin. White directed Wallace to a specific Standard gas station. White told Wallace that the heroin would be under the sink in the men's room. White dropped Wallace at Tiny Naylor's Drive-in. Wallace got into his car and drove to

## I

██ Possession need not be actual possession, if there is circumstantial evidence sufficient to establish dominion and control. Rodella v. United States, 9 Cir., 1960, 286 F.2d 306; Cellino v. United States, 9 Cir., 1960, 276 F.2d 941. There was sufficient, substantial evidence to go to the jury, and to convict, if the jury believed the testimony of Keith Wallace.

## II

██ Counsel asks us to change the federal rule on the lack of necessity of corroboration of the testimony of an accomplice. This we have refused, and do refuse, to do. Audett v. United States, 9 Cir., 1959, 265 F.2d 837, notes 45 and 46, and cases cited; Williams v. United States, 9 Cir., 1962, 308 F.2d 664; Toles v. United States, 9 Cir., 1962, 308 F.2d 590; Bible v. United States, 9 Cir., 1963, 314 F.2d 106.

## III

██ The first instruction objected to was favorable to appellant. But whether it was or not, no objection was made to it when it was given, and any objection was waived. Walker v. United

States, 9 Cir., 1962, 298 F.2d 217; O'Neal v. United States, 9 Cir., 1962, 310 F.2d 175. No point is made that the instruction is an incorrect statement of law, merely that it is not applicable to the facts of this case. Under such circumstance, it is peculiarly defense counsel's obligation to make timely objection. Defendant's interpretation of the facts would eliminate and fail to consider much testimony favorable to the prosecution.

The second instruction complained about would be error only if the presumption contained in 21 U.S.C. § 174 is unconstitutional.

## IV

██ Section 174 of Title 21 United States Code, with its presumption, is not unconstitutional. Caudillo v. United States, 9 Cir., 1958, 253 F.2d 513, certiorari denied. Romero v. United States, 357 U.S. 931, 79 S.Ct. 1375, 2 L.Ed.2d 1373.

## V

Under this point, appellant cites good law, Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, wholly inapplicable to the factual situation disclosed by the record.[2] There was

7th and Normandie where he met with Federal agents. Wallace was searched. His car was searched. Wallace drove to the Standard gas station and looked in the men's room for the heroin. Wallace did not find the heroin in the Standard gas station. Wallace looked in another gas station across the street. Again Wallace did not find the heroin. Wallace returned to his apartment. Wallace was searched by Federal agents. Wallace then left his apartment and drove to a bowling alley near Santa Monica and La Cienega. Wallace parked his car parallel to White's car. White and a man named Burley were in White's car. Wallace told White and Burley that he could not find the heroin at the Standard gas station. Wallace was then directed to another gas station. Wallace went to the gas station and picked up the heroin. Wallace then drove back to his apartment and surrendered the heroin to a Federal agent."

2. The four instances of alleged prejudicial misconduct are as follows:
(a) "We are not dealing here with East Los Angeles, simple marihuana

peddlers, these are West Los Angeles people, clever. No agent gets in with these people, must use informers. That's part of the game. It's a necessity." (R. T. 112, 133.)
(b) "Remember something else, under our rules, his earlier statements are available. He was cross-examined and he could have been cross-examined on any earlier statements had he differed from them greatly. This must be the same story he has originally told." (R.T. 115.)
(c) "Of course, the agents remember the exact details better than Wallace. They are trained to do so." (R.T. 116.)
(d) "I would like some day to open a narcotic file on my desk and find out that the chief informant for the Government is the President of the Bank of America and he has gone out and made a buy. You don't get people like that; you don't use them as informers * * * the way these people do business, they have very little conversation to make a sale * * * in fact, that's the way they do business, as little conversation as possible * * * remember there is

clearly no prejudicial misconduct, just the good, ordinary and usual arguments presented to juries by prosecutors.

But even had there been a taint of unfairness or prejudice, no voice was raised in protest—no objection ever raised—no chance given the trial court to cure any alleged error. This is a complete waiver.

Finding no error, and the record disclosing appellant had a fair trial, the judgments of conviction on Counts I and II are

Affirmed.

very little conversation needed when narcotic sales take place, almost none * * * It is indeed not a perfect case. There is no Fargo Device and counsel makes a point, why didn't you have a transmitting device? They happen to have one device for 40 agents. They are often not used in these cases * * * you see a dozen informants take the stand and they are not eager witnesses." (R.T. 125–129.)